CITY OF CLEVELAND, EX REL. KAY, *v.* RIEBE ET AL.

(No. 942,147—Decided June 9, 1975.)

Common Pleas Court of Cuyahoga County.

*Mr. Richard B. Kay*, for plaintiff.
*Mr. James B. Davis*, director of law, for defendants.

FINK, J.   This is an action brought by Richard B. Kay, allegedly acting for and on behalf of the city of Cleveland and its citizens, against the Director of Finance, Treasurer, Law Director and Mayor of the city of Cleveland.   The plaintiff alleges that the Ohio Revised Code requires that those holding municipal offices in the city of Cleveland must be electors of the city of Cleveland, and that many of those

now holding such offices do not meet that qualification. He further alleges that Raymond Kudukis is serving as Director of the Department of Public Utilities of the city of Cleveland and is also a member of the Board of Regional Sewer District, a fact admitted by both sides. The plaintiff alleges that the two offices are incompatible and/or that it is not physically possible for Mr. Kudukis to discharge the duties of both. The plaintiff asks for an order restraining the Director of Finance and the Treasurer of the city of Cleveland from paying out any further funds to those officers of the city of Cleveland who are not electors of the city; that the court declare that all officers of the city of Cleveland must meet the qualifications as set forth in R. C. 733.68; and that the court find that Raymond Kudukis is holding two offices that are incompatible and/or that the court find that it is not physically possible for him to discharge the duties of both offices.

The defendants filed a joint motion for summary judgment. The plaintiff then filed a brief in support of complaint and against summary judgment for defendants, as well as a motion for summary judgment for plaintiff with brief. As a result of the pleadings, motions, affidavits and briefs filed in this case the issues, stated simply, are:

1. Whether each of the officers of the city of Cleveland must be an elector of the city of Cleveland; and

2. Whether there is any legal incompatibility between the offices of Director of Public Utilities of the city of Cleveland and member of the Board of the Cleveland Regional Sewer District, or, if not, whether or not it is physically possible for the Director of Public Utilities to discharge the duties of both offices.

In 1931, the voters of the city of Cleveland adopted Section 74 of the city charter which required that "every officer and employee of the city of Cleveland must be a resident of Cleveland." In 1967, the city's voters voted to remove section 74 from the city charter. The plaintiff argues that the removal of that section from the charter "left the Charter silent relative to any requirements concerning officers and employees of the city of Cleveland." He then

argues that this void would mean that officers and employees of the city would not have to meet any definite qualifications unless Article XV of the Ohio Constitution and R. C. 733.68 became controlling. The essence of his argument seems to be that if the constitutional provision must apply, so must the statutory provision. As will be discussed, *infra,* plaintiff's argument is not logically persuasive, nor is it supported legally.

An Article of the Constitution of Ohio and a statute do not have the same status and weight. The constitutional provisions are superior. There can be no argument made that simply because the constitutional provision applies, a statute regarding the same subject must necessarily also apply. This is especially so when the statute in question is in conflict with another Article of the Constitution. That is the situation presented in this case.

There is no dispute that the powers of charter municipalities in Ohio arise from Section 3, Article XVIII of the Constitution of Ohio. That section states as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

There is also no dispute that the city of Cleveland, pursuant to the Ohio Constitution, adopted a charter in 1913. By the terms of that charter, the city of Cleveland acquired the power to determine the qualifications of its municipal officers. Section 1 of that charter states in part:

"The inhabitants of the City of Cleveland * * * shall be a body politic and corporate by name the City of Cleveland, and as such shall have perpetual succession; * * * may create, establish, abolish and organize offices and fix the salaries and compensations of all officers and employees; * * *."

The charter, established pursuant to the Constitution of Ohio, with powers granted by Section 3, Article XVIII, by its express provisions gives the city of Cleveland exclusive control over establishing the qualifications of its officers and employees. Any statute which is not in accord with the constitutional provisions and the charter is not applicable,

In *State, ex rel. Frankenstein,* v. *Hillenbrand* (1919), 100 Ohio St. 339, the court determined the issue of whether provisions of a municipal charter, established by virtue of the terms of the Constitution of Ohio, relating to the selection of municipal officers, take precedence over a state statute in conflict with that charter provision. The court determined that the provisions of the charter were superior and were to be given effect.

In the *Frankenstein* case, as in this one, Section 7, Article XVIII, of the Constitution of Ohio was involved. That section states:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self government."

The first paragraph of the syllabus of the *Frankenstein* case is as follows:

"Section 7 of Article XVIII of the Constitution of Ohio vests in cities adopting a charter the power to prescribe the manner of the selection of their own purely municipal officers."

The court clearly indicated that selection of municipal officers and employees was purely a matter of "local self government." Once again a reference to the language of that case is appropriate. At page 345, the court stated:

"This court, then, having held that the manner of selecting purely municipal officers is a subject of 'local self government,' as distinguished from 'local police, sanitary and other similar regulations,' the provisions of the charter must supplant the provisions of Section 4249, General Code, for as was declared by this court in the case of *State, ex rel. Lentz et al.,* v. *Edwards et al.,* 90 Ohio St. 305, 310, 'That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective.'"

The above quoted language also clearly indicates that charter provisions in accord with Section 3, Article XVIII, take precedence over conflicting statutes.

Although the city, by virtue of its charter as shown above, has the power to determine the qualifications of its officers and employees, the charter is silent as to what qualifications are necessary for the positions at issue in this case. This silence in the charter itself, however, does not mean that the city of Cleveland does not have a policy which must be given effect. The city's voters have spoken and there is no louder voice. The city administration has acted accordingly in the period since 1967 by discarding the previously enacted charter provision restricting municipal offices and posts to residents of the city of Cleveland as voted by the people of Cleveland. No written addition to the charter stating that municipal positions are now open to non-residents of the city could be more clear than the manner and eloquence of expression used by the voters in 1967 and the administration since then.

When, as in this case, the charter is silent as to a topic covered by a statute, the court has a duty to investigate the reasons for the silence, rather than to simply determine that the code section is automatically triggered and becomes effective. By not so investigating the court would be denying the city of Cleveland, and its people, the right to local self-government afforded under the Constitution of the state of Ohio. Documents such as charters and constitutions, since the early history of this country, have been subject to interpretation and expansion to fit the needs of new situations. These documents are not simply statements of rigid rules. As this country's history has shown, we do not expect them to be such. In this case, and in many instances throughout our history, significant ideas and policies are expressed in these documents by deletions as well as by clearly written provisions. Here the people have spoken and their will will be done. This is the essence of a free democracy.

Turning to the second issue, the court finds that there is no legal incompatibility between the offices of Director of Public Utilities of the city of Cleveland and member of the Board of the Regional Sewer District. The person who serves in both of those capacities, Mr. Raymond Kudukis, has shown by affidavit that it is not physically impossible

for him to discharge the duties of both. Further, there is nothing in any of the documents establishing and governing those offices which indicates any incompatibility between them. An examination of the duties and responsibilities of both offices also reveals that the common-law test of compatibility of offices is satisfied. The basic rule, stated in *State, ex rel.,* v. *Gebert* (1909), 12 Ohio C. C. (N. S.) 274, at page 275, is:

"Offices are considered incompatible when one is subordinate to, or any way a check upon, the other; or when it is physically impossible for one person to discharge the duties of both."

The affidavit of Mr. Kudukis shows that neither office is subordinate to the other or may in any way be a check upon the other. The plaintiff has not, in any way specified by Civ. R. 56, controverted the affidavit of Mr. Kudukis.

It is therefore ordered, adjudged and decreed that summary judgment is granted in favor of all the defendants at plaintiff's costs.

*Judgment accordingly.*